CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

7/2/2026

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
ROANOKE DIVISION

|  |  |
|---|---|
| BERMAN JUSTUS,<br><br>      *Petitioner,*<br><br>  v.<br><br>DIRECTOR CHADWICK DOTSON,<br><br>      *Respondent.* | CASE NO. 7:13-CV-00461<br><br><br>**<u>MEMORANDUM OPINION</u>**<br><br><br>JUDGE NORMAN K. MOON |

Respondent Chadwick Dotson ("Dotson"), through counsel, moves to dismiss Petitioner Berman Justus' ("Justus") amended petition for a writ of habeas corpus. Dkt. 106. Dotson asks the Court to dismiss Justus' amended petition because it: (i) is procedurally defaulted; (ii) fails to allege the cause and prejudice required to excuse this procedural default; and (iii) is untimely. *Id.* Dotson further argues that, even if the Court finds that Justus' petition is free of procedural errors (or that he has otherwise overcome them), he also failed to adequately allege the merits of his claims. Dkt. 107. Justus opposes the motion. Dkt. 108. For the following reasons, the Court will grant Dotson's motion and will dismiss the case.

<u>FACTS</u>

In 2003, Justus "shot and killed his estranged wife [Amanda] . . . and her boyfriend [Joe]" in front of his 4-year-old son. Dkt. 104 ¶ 7. During his trial, Justus "did not contest his actions," but instead testified he was acting "under religious delusions." *Id.* Justus' trial counsel testified, through an affidavit, that Justus insisted he received a "special mission from God" to kill the "evil people of the world," like his wife and her boyfriend, in order to "help trigger the End of Days apocalypse that would result in the triumph of good over evil." *Id.* ¶¶ 7-8; Dkt. 1-3 at 3. Justus

asserted that because "Mr. Rodgers (the children's television host) and Dave Thomas (the founder of Wendy's) had recently died," "he was one of the last good people on earth" so it was up to him to "accomplish God's mission." *Id.* If Justus did not "do exactly as God had ordered," he believed he "would not see the Promised Land." Dkt. 1-3 at 3.

Due to these delusions, and because he became "floridly psychotic," the state trial court declared Justus incompetent and ordered that he be "admitted to Central State Hospital (CSH) from April to October" 2004 and again from "November 2005 through May 2006." Dkt. 104 ¶¶ 9-10. After his competence was restored in October 2006, his case proceeded to a bench trial, at which the state trial court found Justus "not insane at the time of the offense" and convicted him on all counts. *Id.* ¶¶ 11-12. The trial court entered judgment against Justus on January 23, 2007, and sentenced him to "two life terms plus eighteen years," which Justus' trial counsel timely appealed. *Id.* ¶¶ 12-13.

At the Virginia Court of Appeals, Justus' counsel presented only one issue—his legal insanity at the time of the offense. Dkt. 104 ¶ 13. Yet, in preparing the appellate record, Justus' counsel failed to include 18 pages of the trial transcript that included Justus' testimony regarding the offense and his mental state. *Id.* ¶ 14. The Virginia Court of Appeals denied the appeal, concluding "the record before us does not support appellant's claim he was insane at the time of the offense." *Id.* Justus' counsel did not appeal this denial to the Virginia Supreme Court due to a paperwork error. *Id.* ¶ 15.[1]

---

[1]    Two years later, in 2010, Justus filed a bar complaint against his attorney due to the incomplete trial transcript and the failure to appeal the case to the Virginia Supreme Court. Dkt. 104 ¶ 16. The Virginia State Bar District Committee later dismissed his bar complaint as they found "no compelling reason" to decide what "should or should not appear in a Petition for Appeal." Dkt. 72-6 at 8-9.

In November 2010, Justus filed a *pro se* petition for a writ of habeas corpus in Greene County Circuit Court, arguing that "court's transcrips (sic) missing 18 pages resulting in a violation of due process and violating his constitutional rights" and "ineffective assistance of counsel" stemming from his counsel's alleged "fail[ure] to admit evidence that would've proven [a witness] made false statements on the stand" (among other allegations, none of which related to the 18-page omission). Dkts. 72-8 at 6, 7; 104 ¶ 18. Justus amended this petition in January 2011 to include a claim for "ineffective assistance of counsel" based on his counsel's "failure to perfect [his] appeal," but the petition was deemed untimely and subsequently denied in February 2011. Dkt. 72-6 at 17, 22-25; 104 ¶ 18.

Renewing his efforts in June 2012, Justus filed a second *pro se* petition for a writ of habeas corpus in Greene County Circuit Court, again asserting ineffective assistance of counsel due to his counsel's failure to perfect his appeal to the Virginia Supreme Court. Dkt. 90-4. This second writ was also deemed untimely; Justus appealed the denial to the Virginia Supreme Court where his petition was again "denied" as there was "no reversible error." Dkt. 72-6 at 69.

Justus then began his federal habeas proceedings in September 2013, asserting a single claim for "ineffective assistance of counsel based on his counsel's failure to ***perfect the appeal to the Supreme Court of Virginia***." Dkt. 104 ¶ 19 (emphasis added). This Court "denied the petition as untimely under the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations . . . [a]nd denied a certificate of appealability the same day." *Id.* ¶ 20. Five years later, Justus filed a motion for reconsideration, which this Court initially denied. *Id.* After Justus appealed this ruling, the Fourth Circuit remanded the case to this Court for further proceedings on the issue of equitable tolling. United States Magistrate Judge Memmer held an evidentiary hearing,

and based on her report and recommendation, this Court vacated its prior judgment and "concluded that Mr. Justus' habeas petition was timely pursuant to the application of equitable tolling." *Id.*

Soon after this Court reopened the case, Dotson moved to dismiss the petition. Dkt. 89. Justus opposed the motion and sought leave to file an amended petition, which this Court granted. Dkts. 94, 98, 100. Justus' amended petition states three claims: (i) Justus' counsel's failure to present a complete trial transcript to the Virginia Court of Appeals was ineffective assistance of counsel ("Claim One"); (ii) Justus' counsel's failure to present a complete trial transcript to the Virginia Court of Appeals was a due process violation ("Claim Two"); and (iii) Justus' counsel's failure to appeal his case to the Virginia Supreme Court was ineffective assistance of counsel ("Claim Three"). Dkts. 103, 104. Dotson moved to dismiss the amended petition. Dkt. 106.

## LEGAL STANDARD

A motion to dismiss a petition for a writ of habeas corpus under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a petitioner has stated a claim such that the court can grant relief. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). When ruling on such a motion, a court must consider "the face of the petition and any attached exhibits." *See Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). The court may also consider "matters of public records, such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker*, 589 F.3d at 139.

Although a petition for a writ of habeas corpus differs from a complaint, when a party moves to dismiss, the writ "should be evaluated pursuant to the principles of Federal Rule of Civil Procedure 12(b)(6)." *Wolfe*, 565 F.3d at 169 (citing *Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006)). Thus, a petition "does not need detailed factual allegations" to survive a 12(b)(6) motion; however, a petitioner must provide "more than labels and conclusions [or] a formulaic recitation of the elements

4

of a cause of action." *Twombly*, 550 U.S. at 555. When considering these motions, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). Rule 12(b)(6) does not require "heightened fact pleading;" yet, the petitioner must plead "enough facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

**ANALYSIS**

**A.  The Statute of Limitations for Claims One and Two is Equitably Tolled**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one-year statute of limitations for federal habeas relief. 28 U.S.C. § 2244(d). If a petitioner fails to bring a federal habeas petition within a year of their state court conviction becoming final, a federal court will dismiss the petition as untimely. This statute of limitations may be tolled only in rare circumstances where a petitioner faces (1) extraordinary circumstances that stand in their way preventing timely filing, and (2) where a petitioner can prove they have been pursuing their rights diligently. *Holland v. Florida*, 560 U.S. 631, 649 (2010). When considering tolling § 2254's statute of limitations, a court "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Keeping this guiding principle in mind, the Court previously tolled the statute of limitations for Justus' initial petition (which only included Claim Three). Dkts. 84, 87. As this decision was based on Justus' initial petition, and as Claims One and Two were not brought within AEDPA's statute of limitations, the Court now considers whether it should be tolled for them.

The Court rests on its previous conclusion regarding Justus' mental health—the severity of his mental health "strongly suggests that Justus either would not have been able to rationally or factually understand the need to timely file or that this mental state rendered him unable to prepare and file a habeas petition." Dkt. 84 at 38 (citing *Justus*, 78 F.4th at 114). This "extraordinary circumstance" satisfied equitable tolling's first element for the initial petition; and as such, the Court finds it is sufficient to satisfy the first element for Claims One and Two.

The closer question is whether Justus has shown reasonable diligence in pursuing his rights. To establish this element, a habeas petitioner must use "reasonable diligence," "maximum feasible diligence" is not required. *See Holland*, 560 U.S. at 653. In situations where a petitioner faces mental illness or impairment, a petitioner must demonstrate "diligence in pursuing the claims to the extent he could understand them," even if "the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." *Bills v. Clark*, 628 F.3d 1092, 1100 (9th Cir. 2010).

Justus' case has faced delays for many years.[2] These delays, however, must be evaluated through the lens of his severe mental illness—one that was left completely untreated by the

---

[2]    The delays in Justus' case occurred at multiple stages of the litigation. Four months after the Virginia Supreme Court denied his final appeal, Justus filed his initial petition in this Court. Dkt. 1; Dkt. 72-6 at 69. The Court rejected his petition as untimely, and he did not file a motion to reconsider until five years later in August 2019. Dkt. 10. The Court again denied Justus' motion, which he appealed within a month of the denial. Dkt. 13.

The Court appointed Justus appellate counsel in August 2022; the Fourth Circuit ruled in his favor a year later and ordered an evidentiary hearing take place on the timeliness of Justus' motion. Dkts. 23, 32. Judge Memmer issued her Report & Recommendation in January 2025, which the Court adopted in May 2025. Dkts. 84, 87. In July 2025, Dotson briefed a motion to dismiss once the Court determined Justus' habeas petition was timely; Justus moved for an extension of time to respond to this motion and to amend the habeas petition fifteen (15) days later. Dkts. 89, 94. The Court granted Justus' motion to amend, which he timely filed on September 24, 2025. Dkts. 103-04.

Virginia Department of Corrections from 2008 to 2016. Dkt. 84 at 16. Despite his limitations, Justus continued to move his case forward by (1) filing his federal habeas case soon after his state case concluded, and (2) timely appealing his case after this Court denied his petition as untimely. And even though his counsel did not amend Justus' habeas petition to include Claims One and Two for two years, counsel timely participated in both the appellate process and the evidentiary hearing on remand. Further, amending the petition earlier would have been contrary to the Fourth Circuit's directions about how the case needed to proceed. Thus, considering his extensive mental illness and avoidance symptoms, the Court concludes Justus acted with reasonable diligence "given his mental illness." *Justus v. Clark*, 78 F.4th 97, 116 n.10 (4th Cir. 2023). The Court considers Justus' claims timely because of equitable tolling.

**B. Claim One: Justus Did Not Receive Ineffective Assistance of Counsel When His Counsel Failed to Submit a Complete Transcript to the Virginia Court of Appeals because the Missing Pages Would Not Have Changed the Appeal's Outcome**

Before a federal court can proceed under 28 U.S.C. § 2254, a petitioner must demonstrate "exhaustion," meaning they must show that state courts had a "full and fair opportunity to resolve federal constitutional claims before those claims [were] presented to the federal courts." *See Hedrick v. True*, 443 F.3d 342, 369-70 (4th Cir. 2006) (Gregory, J., concurring in part); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Practically speaking, this means "federal courts may not grant an application for a writ of habeas corpus unless . . . the applicant has exhausted the remedies available in the courts of the State." *Hedrick*, 442 F.3d at 370 (citing 28 U.S.C. § 2254(b)(1)).

Exhaustion typically is satisfied through a petitioner's appeal to the state's highest court; indeed, claims not exhausted through the appeals process are considered procedurally defaulted and cannot be heard by federal courts. *See, e.g.*, *Johnson v. State of Maryland*, 1986 WL 17633 (4th Cir. 1986) (unpublished) ("Until the claims are exhausted in state courts, federal review is

precluded."). Yet, a petitioner bringing a procedurally defaulted claim is not without recourse. Petitioners may overcome a procedural default by (1) demonstrating "that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court," (2) "demonstrat[ing] cause;" and (3) demonstrating "prejudice." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).[3] Once a court has determined exhaustion, it then turns to the claim's merits.

As Justus never raised Claim One in his state habeas proceedings, Justus did not exhaust his remedies in state court; therefore, this claim is procedurally defaulted.[4] Dkt. 72-8 at 15-17. And as Virginia state habeas law requires that claims be brought within two years from the date of final judgment, Justus' claim would be procedurally barred under state law if he attempted to present it to the state court. Va. Code Ann. § 8.01-654 (West 2021); *Baker*, 220 F.3d at 276. Therefore, the

---

[3]     These requirements have roots in the federal courts' jurisdictional limitations. *Herb v. Pitcairn*, 324 U.S. 117, 125-26 (1945) ("Our only power over state judgments is to correct them to the extent that they incorrectly adjudge federal rights. And our power is to correct wrong judgments, not to revise opinions. We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion."). A federal court, therefore, cannot review a case if state issues "independently and adequately support the judgment." *Michigan v. Long*, 463 U.S. 1032, 1038 (1983).

Consider how this principle relates to § 2254's exhaustion requirement. If a state court could not hear a habeas case because of a procedural bar, that procedural bar "indicates" the result of the case "clearly and expressly" and is an "independent and adequate" state-law ground precluding federal review. *Long*, 463 U.S. at 1041; *Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015). To overcome this, a habeas petitioner must demonstrate "cause and resulting prejudice" or a "fundamental miscarriage of justice" *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). As a "fundamental miscarriage of justice" only occurs when a petitioner alleges their actual innocence, which Justus has not, the Court will only analyze if he has established cause and prejudice.

[4]     Justus raised a due process claim stemming from his attorney's failure to send a complete transcript to the Virginia Court of Appeals but never raised an ineffective assistance of counsel claim based on this conduct in his state habeas proceedings.

Court must evaluate if Justus has established both cause and prejudice to excuse the procedural default.

### a. Justus Has Established Cause to Excuse Procedural Default

When evaluating if a petitioner has established cause, the Court must look for an "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Justus argues his "undisputed and severe mental health issues provide good cause to excuse any procedural default." Dkt. 108 at 9.

A habeas petitioner's mental health can constitute good cause to excuse procedural default if it has "incapacitating effect[s]." *See Thomas v. Cunningham*, 313 F.2d 934, 937 (4th Cir. 1963); *Farabee v. Johnson*, 129 Fed. Appx. 799, 802 (4th Cir. Apr. 22, 2005) (unpublished) (finding no cause where petitioner failed to demonstrate mental illness "actually caused his procedural defaults"). "Incapacitating effects" occur when a petitioner's "mental illness interfere[s] with [their] ability to appreciate [their] litigation position or to make rational decisions concerning the litigation during the entirety of the relevant time periods so that [they were] unable to consult with counsel, file pleadings, or otherwise comply with state procedural requirements." *Id.* at 804 (internal citations omitted).

Here, the relevant time period is from November 2010, when Justus filed his first state habeas petition, through June 2013, when the Virginia Supreme Court denied Justus' second state habeas petition. Dkts. 72-6 at 69; 72-8 at 6, 7; 104 ¶ 18. The Court must evaluate if Justus' mental health during this time period "interfered with his ability to appreciate his litigation position." *Farabee*, 129 Fed. Appx. at 804. Record evidence strongly indicates it did.

Justus, diagnosed with bipolar disorder, schizoaffective disorder, and post-traumatic stress disorder (among other things), stopped receiving mental health treatment and medication from the

Virginia Department of Corrections in 2008. Dkt. 84 at 16 (citing Hr'g Tr. at 55-56). Justus' conditions require "lifelong treatment" to be managed properly. *Id.* at 20 (citing Stejskal Dep. Tr. 56). And relying on the testimony from both his medical providers and peers in Wallens Ridge and Keen Mountain, Justus experienced "physical manifestations" of his conditions from 2010-2013 including being "hypervigilant;" experiencing depressive symptoms such as being "curled up in the fetal position in the chair . . . with his arms around his knees and his head buried as deeply into his arms as he could while he wept;" having "clearly involuntary motor tics;" being unable to "interact like a normal person would;" and not "understanding the relevance of legal deadlines." Dkt. 84 at 22, 25, 28 (citing Stejskal Dep. 52; Hammer Dep. 7; Young Dep. 91-92). Indeed, as this Court has previously found, "the evidence of Justus's symptoms both before and after the relevant period strongly suggests that Justus either would not have been able to rationally or factually understand the need to timely file or that his mental state rendered him unable to prepare and file a habeas petition." Dkt. 84 at 38.

Dotson argues Justus fails to demonstrate cause on Claim One because he "appealed the denial of [Claim 3] to the Supreme Court of Virginia, and he contemporaneously filed other documents." Dkt. 107 at 6.[5] This argument, however, fails to sufficiently consider (1) that Justus' habeas petitions were both incomplete and untimely, and (2) the effects of Justus' mental illness

---

[5]      Dotson points to the cases *Robison v. Hinkle* and *United States v. Sosa* in support of this argument. The Court finds these cases are factually distinguishable. Although the court in *Robinson* found petitioner's ability to file state habeas petitions during the relevant time period "refute[d] his claim of incapacity," petitioner also received mental health treatment and suffered from conditions less severe than Justus. 610 F. Supp. 2d 533, 543-44 (E.D. Va. 2009). And further, *Sosa* does relate to a petitioner's mental health at all—it merely rejects a petitioner's argument that ignorance of the law serves to equitably toll 2254's statute of limitations—an argument Justus does not make in either his petition or his reply brief. 364 F.3d 507, 512 (4th Cir. 2004). As such, the Court will not rely on either case when analyzing if Justus has established cause to excuse procedural default.

on his ability to engage with his case from 2010 to 2013. As enumerated in Judge Memmer's report

and recommendation, Justus faced "markedly worse" mental health symptoms "when he discussed

the offense and the circumstances around the offense." Dkt. 84 at 10-11 (citing Hr'g Tr. at 22).

These symptoms included "avoidance," where Justus' "brain [was] trying to actively keep [him]

away from thinking about things that are upsetting and distressing," such as his pending legal

proceedings. *Id.* at 13. These symptoms, paired with the fact that Justus was not receiving mental

health medication or treatment during 2010-2013, are sufficient to demonstrate that Justus'

symptoms caused his deficient habeas filings for Claim One.

### b. *Justus Has Not Established Prejudice to Excuse His Procedural Default*[6]

The Court must now evaluate if the constitutional error Justus alleges, *i.e.*, that his counsel

failed to provide the Virginia Court of Appeals with the entire transcript of his proceeding, actually

prejudiced him. For Justus to demonstrate actual prejudice, "he must shoulder the burden of

showing, not merely that the errors . . . created a possibility of prejudice" but rather that the errors

"worked to his actual and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 495 (1986)

(quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). When evaluating the actual prejudice

caused by an incomplete transcript, courts consider if the proceedings raised issues that "require[d]

resolution by reference to the [missing] transcript." *United States v. Brown*, 202 F.3d 691, 697 (4th

---

[6]     The Fourth Circuit, along with the remaining federal circuits, have not delineated clear
differences between prejudice required to excuse procedural default and the prejudice required to
state an ineffective assistance of counsel claim. *See, e.g.*, *Williams v. French*, 146 F.3d 203, 210
n.10 (4th Cir. 1998) ("It is not clear whether the showing of prejudice required to excuse a
procedural default is identical to the showing of prejudice required to establish ineffective
assistance of counsel."); *Freeman v. Lane*, 962 F.2d 1252, 1258-59 & n. 5 (7th Cir.1992)
(discussing distinction between procedural bar and ineffective assistance "prejudice" tests); *United
States v. Dale*, 140 F.3d 1054, 1056 n. 3 (D.C. Cir. 1998); *United States v. Walling*, 982 F.2d 447,
449 (10th Cir. 1992). In coming to its decision, the Court concludes Justus has not established
prejudice under either standard, dismissing his claim because: (i) he has not excused the procedural
default, and (ii) he has not established ineffective assistance of counsel under *Strickland.*

Cir. 2000). Justus, therefore, must show that the error counsel made by failing to provide the Virginia Court of Appeals with a full transcript had a "substantial and injurious effect" on the petitioner that "specifically prejudices his ability to perfect an appeal." *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013); *United States v. Huggins*, 191 F.3d 532, 534 (4th Cir. 1999).

Justus alleges the Virginia Court of Appeals "noted its analysis was constrained by the absence of critical pages from the record" and therefore "denied [his] petition for appeal." Dkt. 104 at 5. He asserts these pages were "his own testimony" where he described "components of the delusions he claimed caused him to kill Justus and White." *Id.* As the sole issue on appeal was Justus' insanity, he argues this error "deprived [him] of effective appellate counsel." *Id.* at 7.

Justus' arguments fail to consider: (1) the record evidence before the Virginia Court of Appeals regarding his sanity at the time of the offense, and (2) the appellate standard of review that bound the Court of Appeals.[7] First, the Court of Appeals considered Justus' testimony in the record and found that, though Justus himself "denied having a sense of purpose to kill [his wife] and [and her boyfriend]," his testimony at the scene of the crime indicated "he had shot [his wife] because she was keeping their son from him, not because he was acting upon a command from God." Dkt. 72-8, Ex. C at PX8-24, 25. Second, the Court of Appeals considered the testimony from Dr. Stejskal who after "evaluat[ing] [Justus] several times" "had no degree of professional certainty about [his] sanity at the time of the offense" as Justus "did not articulate a direct connection between his delusional beliefs and his decision to kill [his wife] and [her boyfriend]." *Id.* PX8-23. Third, the Court of Appeals considered the testimony from Dr. Nelson, a "clinical

---

[7]    Virginia's appellate courts cannot "retry the facts, reweigh the [] evidence, or make its own determination of the credibility of the witnesses." *Wagner Enters., Inc. v. Brooks*, 407 S.E.2d 32, 35 (Va. Ct. App. 1991); *see also Jeffreys v. Uninsured Employer's Fund*, 823 S.E.2d 476, 478 (Va. 2019).

psychologist" who "believed [Justus] was not psychotic until after the killings." *Id.* Relying on these three pieces of evidence and applying the highly deferential standard of review, the Court of Appeals concluded "the record supports the trial court's conclusion that appellant did not prove he was insane at the time of the offenses." *Id.* PX8-25.

Justus provides no argument to rebut this evidence. Instead, he focuses entirely on the fact that the missing pages were "the most significant moment in the trial." Dkt. 108 at 14. But because other evidence in the record indicated Justus was not insane, the "essential" missing pages would, at most, have created a credibility question. Dkt. 108 at 19. But the trial court, which heard all the evidence, had already resolved any credibility issues and the Virginia Court of Appeals could not second-guess those determinations. *See Jeffreys*, 823 S.E.2d at 478.

Because there was already sufficient evidence in the record to support the trial court's finding and the Court of Appeals could not reweigh the evidence, counsel's failure to provide certain transcript pages on appeal could not have altered the Court of Appeals' decision on Justus' sanity. Therefore, there was no prejudice and Justus has failed to remedy the procedural default.

###### c. Justus Failed to Allege a Plausible Claim for Relief in Claim One.

Even assuming procedural default is excused, Justus' Claim One fails on the merits. *Strickland v. Washington* provides the framework when evaluating ineffective assistance of counsel claims on federal habeas review. *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008). Thus, under *Strickland*, Justus must establish that his counsel (i) "fell below an objective standard of reasonableness," considering professional standards, and (ii) that a "reasonable probability exists" that "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

Justus' trial counsel's performance fell below the professional standards set by the American Bar Association for criminal appeals—namely, he failed to "specify those portions of the trial court proceedings to be included in the record for purposes of appeal." Am. Bar Ass'n, *Criminal Appeals*, Standard 213.3(b) (1980). As such, Justus has established deficient performance under *Strickland* as his omission of 18 pages from the transcript fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Justus, however, does not establish prejudice. As stated above, the Virginia Court of Appeals considered credible record evidence that Justus was not insane at the time of the crime, including testimony from two expert witnesses. Dkt. 72-8, Ex. C at PX8-23-25. Because the extra pages would, at most, have introduced a credibility question (that the trial court already answered and the Virginia Court of Appeals was required to treat with deference), there is not a "reasonable probability" that the missing pages would have changed the appeal's outcome. *Strickland*, 466 U.S. at 694.[8] Thus, in addition to dismissing based on the procedural default, the Court will dismiss Count One on the merits because Justus cannot satisfy *Strickland's* prejudice standard.

**C. Claim Two: Justus Was Not Denied Due Process Through His Counsel's Failure to Submit a Complete Transcript to the Virginia Court of Appeals**

   *a. Justus Failed to Exhaust Claim Two*

Similarly to Claim One, Justus has procedurally defaulted on Claim Two. Justus raised Claim Two in his initial state habeas proceeding; the Greene County Circuit Court denied the claim as untimely. Dkt. 72-8. As Justus never appealed this decision to the Virginia Supreme Court, the

---

[8]    The Court need not consider the double deference standard for 2254 claims of ineffective assistance of counsel (that the state court's determination was not incorrect, but rather, was unreasonable) as Justus fails to establish a threshold *Strickland* claim.

Court must therefore evaluate if he has established cause and prejudice in order to excuse this default. Dkt. 72-8 at 15-17.

> b. *Justus Demonstrated Cause, but Failed to Allege Prejudice to Excuse the Procedural Default*

The Court's above analysis regarding cause and prejudice applies to Claim Two, because the error Justus alleges in Claim Two is the exact same error he alleges in Claim One—*i.e.* his attorney's failure to include the 18 pages of the missing trial transcript. Justus has established cause to excuse his procedural default but has failed to demonstrate the required prejudice. The Court will grant Dotson's motion to dismiss on Claim Two.

> c. *Justus Failed to Allege a Plausible Claim for Relief in Claim Two.*

In the alternative, and assuming Justus has excused his procedural default, Claim Two still fails on the merits. Procedural due process aims to provide a habeas petitioner with "notice and an opportunity to be heard." *Wolf v. Fauquier Cnty Bd. of Supervisors,* 555 F.3d 311, 323 (4th Cir. 2009). Therefore, to state a due process claim, Justus must allege "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *See Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011) (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)).

Justus alleges his counsel's failure to provide a complete transcript to the Virginia Court of Appeals deprived him of "meaningful and effective appellate review," which he argues is a "cognizable liberty interest." Dkt. 108 at 21. Although the United States Constitution provides no fundamental right of appeal to criminal defendants, if a state chooses to provide this right, defendants have a liberty interest in an appeal that considers a "record of sufficient completeness to permit proper consideration of [their] claims." *See Mayer v. City of Chicago*, 404 U.S. 189, 194

(1971) (citing *Draper v. Washington*, 372 U.S. 487, 496 (1963)). This requirement, however, "does not translate automatically into a complete verbatim transcript." *Id.*

While Justus has a cognizable liberty interest, and the Virginia Court of Appeals took state action in reviewing the incomplete record, the review was not "constitutionally inadequate" as other record evidence existed as to Justus' mental health that the court diligently considered. As analyzed above, the record contained conflicting information about Justus' mental health, including credibility determinations of two expert witnesses. *See supra* section B. Because of this, and because the Virginia Court of Appeals' review considered a "record of sufficient completeness to permit proper consideration of [his] claim," the Court will grant Dotson's motion to dismiss for Count Two on this additional ground. *Mayer*, 404 U.S. at 194.

### D. Claim Three[9]

Claim Three argues Justus received ineffective assistance of counsel when his attorney failed to perfect his appeal to the Virginia Supreme Court. Dkt. 104 at 11-12. Justus argues that his attorney's "deficient performance entirely deprived him of his right to appeal." *Id.* at 11. This argument runs contrary to binding Supreme Court precedent establishing "a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals." *Wainwright v. Torna*, 455 U.S. 586, 587 (1982). Justus acknowledges his argument is contrary to precedent but raises it anyway "to preserve that argument for potential future appeal." *Id.* at 12.

Because Justus did not have a right for a discretionary appeal to the Virginia Supreme Court, his attorney's failure to perfect this appeal cannot be considered ineffective assistance of

---

[9] Justus raised Claim Three in his second state habeas petition, which he appealed to the Virginia Supreme Court. Dkts. 72-6 at 69; 104 ¶¶ 15, 18. He thus exhausted this claim. Likewise, the Court previously adopted Magistrate Judge C. Kailani Memmer's Report and Recommendation finding Claim Three to be timely. Dkts. 84, 87.

counsel under *Strickland*. *See Ross v. Moffitt*, 417 U.S. 600, 614-15 (1974) (discussing discretionary nature of appeals to state supreme courts); *Folkes v. Nelsen*, 34 F.4th 258, 280 (4th Cir. 2022) ("[T]he constitutional right to appellate counsel is satisfied in advance of the appellate court's decision and that counsel's role ends upon issuance of that decision."). As such, Dotson's motion to dismiss will be granted as to Claim Three.

CONCLUSION

For the foregoing reasons, the Court will grant Dotson's motion to dismiss Justus' amended writ of habeas corpus. Dkt. 106.

A separate order will issue.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this  2nd  of July, 2026.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE